## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Herbert William Jones, Jr., | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:24cv976 (CMH/LRV) |
| | ) | |
| Director Department Corrections, | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Herbert William Jones, Jr. ("Petitioner" or "Jones"), a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his April 29, 2022 convictions in the Circuit Court of Nottoway County, Virginia for burglary, two counts of petit larceny, and the April 29, 2022 revocation of a suspended sentence for a good behavior violation.[1] The Respondent filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits. Petitioner has filed a response. [Dkt. No. 14]. On December 6, 2024, in accordance with Milla v. Brown, 109 F.4th 222 (4th Cir. 2024), the Court advised Petitioner of his rights to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 17]. No additional pleadings have been filed and this matter is now ripe for disposition. For the reasons that follow, the Respondent's Motion to Dismiss must be granted, and the petition dismissed with prejudice.

---

[1] Onn March 22, 2020, Jones was released from incarceration on the active portion of his sentence for failing to register as a sex offender. Commonwealth v. Jones, Case No. CR20-137-00, at 177 (Nottoway Cir. Ct.). A violation of probation report was filed on July 15, 2020 and a revocation proceeding was scheduled. (Id. at 176). Jones was indicted on November 6, 2020 for two counts of peeping or spying into a dwelling place (Third Offense). (Id. at 208-09). In addition, he had two counts of destroying property, two counts of petit larceny, and one count of breaking and entering. He waived his right to trial by jury, and the criminal charges and revocation were each heard the same day, February 14, 2022. (Id. at 340). The court granted the prosecutor's motion to nolle prosequi the two counts of destruction of property; granted trial counsel's motion to strike the two counts of peeping into a dwelling; and found Jones guilty of the probation violation, the two counts of petit larceny, and the burglary charge. (Id. at 342-43).

## I. **Background**

The circuit court, sitting without a jury, tried and convicted Jones on February 14, 2022 for burglary, in violation of Virginia Code § 18.2-91, and two counts of petit larceny, in violation of Virginia Code § 18.2-96. On that same date, in an unrelated matter, the court found Jones had violated the terms of his probation. On April 25, 2022, the court sentenced Jones to nine months, suspended, for the probation violation; twelve months for each petit larceny conviction, suspended; and twenty years in prison, with fourteen years and eleven months suspended, for the burglary conviction. (Id. at 392-93). The total active sentence is five years and one month. Judgment was entered on April 29, 2022. (Id. at 394).

Jones, by counsel, appealed his convictions to the Virginia Court of Appeals, and raised three assignments of error:

1) The Trial Court erred when it did not allow the Defendant's expert witness to testify about the issues with the GPS coordinates as it related to the dates of June 14, 2020 and June 28, 2020 as it was relevant to the GPS accuracy as a whole and whether there was a sufficient evidence presented to convict the Defendant of petit larceny and breaking and entering on May 31, 2020 and of petit larceny on May 9, 2020.

2) The Trial Court erred when it convicted Defendant of petit larceny and breaking and entering on May 31, 2020 as there was insufficient evidence presented to show that the defendant was the person who entered the [Smiths'] home and took the [wallet and money].

3) The Trial Court erred when it convicted the Defendant of petit larceny on May 9, 2020 as there was insufficient evidence presented to show that the Defendant was the person who took [Stewart's lawnmower].

[Dkt. No. 13-4 at 5]. The court found the trial court acted within its discretion in excluding the expert testimony about the accuracy of GPS "because, although relevant, it was cumulative;" Jones v. Commonwealth, Record No. 0712-22-2, 2023 Va. App. LEXIS 330, *6 (Ct. App. Va. May 23, 2023); and that the evidence was sufficient to establish that Jones was the person who entered the victim's home and took the wallet and money, and took the lawnmower as well. Id. at *8-13. The court summarized the evidence as follows:

On May 9, 2020, Qadira Stewart's husband mowed his lawn before stowing the lawnmower near his house. The next morning, Stewart noticed the lawnmower was missing. After hearing the Stewarts' lawnmower was missing, the Stewarts' neighbor, Michael Lee Cole, reviewed surveillance videos captured by his eight security cameras. The videos showed an individual enter Cole's carport at 11:49 p.m. for a matter of seconds, and then leave while covering his face. As he reviewed the videos, Cole visually tracked the individual's movements to the Stewarts' house, where he saw the shadow of an individual carrying away a lawnmower. The individual took the lawnmower from the Stewarts' house, crossed the street, and placed it near a tree in the yard of the house to the left of Cole's house. Cole was unable to identify the individual in the video. Cole captured several screenshots of the activity near his house but did not preserve the actual videos.

In the early morning hours of Sunday, May 31, 2020, several members of the Smith family—Anne Smith, Peter Smith, and two of their daughters—were asleep in their house. The day before, Anne Smith had placed her pocketbook containing her zippered wallet on her dining room table. In the early hours of that Sunday morning, R.S., a minor child of Anne and Peter Smith, heard the back door next to her ground level bedroom open, and for approximately ten minutes she heard footsteps walking up and down the stairs leading to the dining room. R.S. alerted her parents as to what she heard. At 3:00 or 3:30 a.m., Peter and Anne Smith went downstairs to investigate. Peter saw that the wooden back door was unlocked and the adjoining storm door was uncharacteristically cracked open. Peter and Anne searched the house for signs of any disturbance but did not see any[,] other than the open and unlocked doors. Neither Anne nor Peter noticed that anything was missing but did not check Anne's pocketbook at that time. When the Smiths awoke later that morning, nothing appeared to be out of place. Anne took her pocketbook containing her wallet with her to church that day but did not open it. In the afternoon of Sunday, May 31, 2020, Anne noticed the wallet in her pocketbook was open and about $400 or $500 was missing. The last time she had seen that money had been one or two days earlier. Neither R.S. nor Peter had taken the money from Anne's pocketbook.

Jones's terms of probation from a prior conviction required him to wear a GPS ankle monitoring system. In accordance with federal standards, Jones's GPS device reports his position within thirty feet with ninety percent accuracy. The GPS device transmits its location once per minute when in motion. When the GPS device has not moved for more than ten minutes, the GPS device transmits its location once per hour. On May 9, 2020, GPS location data from Jones's monitor placed him within the area of the Stewarts' lawnmower at 11:51 p.m. The data from May 31, 2020, showed Jones in and around the Smiths' home at 3:38 a.m. Six data points indicated Jones's presence inside the house.

Id. at *2-4. In rejecting Jones' sufficiency arguments, the court held that:

[t]he evidence . . . established that Jones was at the Stewarts' house at the same time that the video surveillance indicated that a person removed the lawnmower from the area. Additionally, Jones conceded his presence in the general area and the GPS data placed Jones at the Stewarts' house. Screenshots from the video

3

surveillance recording showed an individual whose movements were tracked to the Stewarts' house. Cole testified that while viewing the surveillance video he was able to track the individual's movements from his house to the Stewarts' house, and back to his neighbor's house where the individual placed a lawnmower against his neighbor's tree. The court had the opportunity to view both Jones and the stills from the surveillance video and make a visual comparison. The record supports that a rational trier of fact could find that Jones was the individual who took the Stewarts' lawnmower.

The record also supports the finding that Jones was the individual who broke into the Smiths' home and took money from Anne's wallet. Although there was no eyewitness testimony, there is sufficient circumstantial evidence such that a rational trier of fact could conclude that Jones unlawfully entered the home and took the money. The GPS monitoring evidence establishes Jones's presence in or around the Smiths' house at the time the Smiths' daughter heard an intruder. The record shows that R.S. heard a person inside the family home opening the back door and climbing the stairs several times. A reasonable factfinder could infer that Jones was the individual that R.S. heard.

The evidence establishes that Anne discovered the money in her pocketbook to be missing after the break-in and that the last time she saw the money in her pocketbook was the day prior. The record also shows that neither her husband nor her daughter, R.S., took the money. At the time of the break-in, the pocketbook was located on the dining room table and would have been immediately visible upon climbing the stairs from the ground level after entering the back door. Upon searching the house after hearing the intruder, the Smiths did not notice that anything else was displaced or missing. A reasonable factfinder could infer that Jones broke into the Smiths' home looking for valuables, found the cash in Anne's pocketbook, and took the cash before leaving the premises.

The record supports a finding that Jones's entry into the house was not lawful, as three members of the Smith family testified that Jones did not have permission to be in their house. . . .

As with the previous two charges, there is sufficient evidence in the record to support the finding that Jones was the perpetrator. The GPS data shows Jones was present in or around the Smiths' house at approximately the same time that an unknown person was heard entering the ground level back door of the Smiths' home and moving throughout the house. The record shows that R.S. heard the back door open and subsequently heard footsteps walking up and down the stairs. Upon investigating, Peter discovered the back door to the house was unlocked and the adjoining screen door was cracked open. Although this evidence is circumstantial, it is sufficient for a rational trier of fact to find beyond a reasonable doubt that Jones was the individual who committed a breaking and entering of the Smiths' house.

Id. at *10-13.

Jones, proceeding pro se, filed a petition for appeal in the Virginia Supreme Court

and asserted three assignments of error:

1) Commonwealth failed to prove beyond a reasonable doubt that [Jones] was guilty of larceny on May 9, 2020[,] as there was insufficient evidence presented to show he was the person who took [Stewart's lawnmower].

2) The evidence was insufficient to show a breaking or unlawful entering on May 31, 2020[,] within the meaning of burglary under [Va.] Code [§] 18.2-91.

3) Commonwealth failed to prove the intent larceny element beyond a reasonable doubt as there was insufficient evidence presented to show any property was removed from within the [Smiths'] home on May 31, 2020[,] and that [Jones] was the criminal agent.

[Dkt. No. 13-8 at 8]. The court refused the petition for appeal on April 2, 2024. [Dkt. No. 13-9].

While his direct appeal was pending in the Virginia Court of Appeals, Jones, proceeding pro se, executed a petition for writ of habeas corpus on October 12, 2021, which he filed on February 28, 2022 in the Virginia Supreme Court. Thereafter, Jones filed five supplemental petitions on March 25, October 23, November 10, 2022, March 14, 2023, and April 27, 2023, [Dkt. Nos. 13-10 through 13-16], from which the Virginia Supreme Court identified ten claims:

1) "[T]he trial court erred in denying [Jones's] pro se motion to dismiss the charges against him for lack of a speedy trial."

2) Jones' counsel was ineffective because counsel "failed to move to dismiss the charges for lack of a speedy trial under Code § 19.2-243."

3) "[T]he evidence adduced at trial was insufficient to sustain Jones's conviction for petit larceny of a lawnmower because the Commonwealth failed to prove he was the thief," and that "the lawnmower was stolen."

4) "[T]he evidence was insufficient to prove [Jones] was the person who broke into the home of Anne and Peter Smith" and "stole money from Anne Smith's purse."

5) "[T]he circuit court improperly revoked [Jones's] previously suspended sentence."

6) "[T]he trial court erred in considering the testimony of the Smiths' minor daughter, R.S., to find him guilty."

7) Jones "was denied the effective assistance of counsel because counsel did not move to strike Anne's testimony that she noticed money was missing from her wallet while at home the afternoon after the burglary" because this testimony was inconsistent with a police report indicating that "she noticed the missing money when she was at church the morning after the burglary."

8) "[T]he evidence was insufficient to support [Jones's] convictions for

5

breaking and entering and petit larceny because the Commonwealth failed to prove beyond a reasonable doubt that he stole less than $500."

9)     "[T]he circuit court improperly revoked [Jones'] previously suspended sentence" and "he was denied the effective assistance of counsel because counsel failed to argue the Commonwealth could not revoke his previously suspended sentence because the allegation that he violated the terms of his suspended sentence had been withdrawn by an order of nolle prosequi and could not be reinstated."

10)    "The trial court erred by admitting hearsay."[2]

[Dkt. No. 13-16]. On February 20, 2024, the court dismissed the habeas petition finding that:

- Claims 1, 6, 8 and 10 were barred by the rule of Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974);

- Claims 2 and 7 failed to state a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 687 (1984);

- Claim 3, to the extent it alleged that the evidence did not establish that Jones was the thief who stole the lawnmower, was dismissed pursuant to the rule of Henry v. Warden, 576 S.E.2d 495, 496-97 (Va. 2003), and, to the extent it alleged the evidence was insufficient to prove the lawnmower was stolen, was barred by the rule of Slayton v. Parrigan;

- Claim 4, to the extent it alleged that the evidence did not establish that Jones was the person who broke into the Smiths' home, was dismissed pursuant to the rule of Henry, and, to the extent it alleged the evidence was insufficient to prove that someone broke into the Smiths' home and took money from the purse, was barred by the rule of Slayton v. Parrigan;

- Claim 5 and a portion of Claim 9, to the extent they alleged the trial court improperly revoked Jones' previously suspended sentence, were barred by the rule of Slayton v. Parrigan; the remaining portion of Claim 9, which alleged counsel was ineffective for not arguing the probation violation charge had been *nolle prossed*, was dismissed for failing to state a claim of ineffective assistance of counsel under Strickland v. Washington.

## II. Present Petition

On May 22, 2024,[3] Jones, proceeding pro se, executed a habeas petition pursuant to 28 U.S.C.

---

[2] In his April 27, 2023 motion to amend his state habeas petition, Jones limited Claim 10 to the testimony of Anne Smith and Peter Smith; he did not challenge the testimony of R.S. or Qadira Stewart. [Dkt. No. 8-15 at 3-7] .

[3] The petition was not filed until June 3, 2024, but it is considered filed when it is delivered to the correctional officials for mailing. See Houston v. Lack, 487 U.S. 266, 276 (1988).

§ 2254, [4] which alleges the following four claims:

I.     "The Commonwealth's evidence was insufficient in showing a 'Breaking' or unlawful entering of the Smith's home on May 31, 2020. . . . and also failed to show [Jones] was the criminal agent beyond a reasonable doubt. . . . [because] there w[as] no evidence presented of a 'felonious taking' of money belonging to Anne Smith by [Jones]." [Dkt. No. 1 at 5, 6].

II.    "The Commonwealth's evidence was insufficient in showing a Larceny by [Jones] within the meaning of the familiar definition of Larceny. . . . the evidence presented at trial . . . failed to show a felonious taking and possession of the stolen lawnmower by [Jones]" and "failed to identify [Jones] as the criminal agent to the exclusion of reasonable doubt." [Id. at 8, 9].

III.   "The trial court erroneously admitted into evidence multiple hearsay statements by Anne Smith, [R.S.], Peter Smith, and Qadira Stewart." [Id. at 10].

IV.   "Ineffective Assistance of Counsel." Appellate counsel "neglected to raise issue with Smith's and Q. Stewart's hearsay statements, . . . the Commonwealth's failure to show a 'breaking' into the Smith's home, and Larceny of the Stewart's lawnmower within the meaning of the familiar definition [of] burglary and petit larceny" on direct appeal. [Id. at 14, 20].[5]

### III. Exhaustion and Procedural Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). Exhaustion requires a petitioner present his federal claims to the appropriate state court in the manner required by the state court, to give the state court "a meaningful opportunity to consider allegations of legal error." Vasquez v. Hillery, 474 U.S. 254, 257 (1986). A claim has not been "fairly present[ed]" for exhaustion purposes if the claim is raised in "a procedural context in which its merits will not be considered."

---

[4] Jones filed a previous § 2254 petition in this Court that was dismissed without prejudice on December 7, 2021. Jones v. Townsend, No. 1:21cv1233-CMH-JFA (E.D. Va. Dec. 7, 2021).

[5] A district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard" and it is "the district court's duty to consider only the specific claims raised in a § 2254 petition." See Folkes v. Nelsen, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); Frey v. Schuetzle, 78 F.3d 359, 360-61 (8th Cir. 1996) ("(D)istrict courts must be careful to adjudicate only those claims upon which the petitioner seeks relief and take care not to decide claims upon which the habeas petitioner never intended to seek relief.").

*Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner convicted in Virginia must have presented the *same* factual and legal claims raised in his § 2254 petition to the Supreme Court of Virginia. *See, e.g.*, *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *see* *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002) (exhaustion requires a petitioner to present "'both the operative facts and the controlling legal principles,'" to the state court) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997)). The petitioner bears the burden of proving exhaustion. *See* *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker*, 220 F.3d at 288 (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)). Such claims are deemed to be simultaneously exhausted and defaulted. *Id.*

Further, "(i)f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim," *Breard*, 134 F.3d at 619; *see also* *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). A state procedural rule is "adequate" if it is firmly established and regularly or consistently applied by the state court and "independent" if it does not depend on a federal constitutional ruling. *Yeatts v. Angelone*, 166 F.3d 255, 263-64 (4th Cir. 1999); *see also* *Castille*, 489 U.S. at 351 (raising a claim in a manner in which its merits will not be considered "unless 'there are special and important reasons therefor'" does not constitute "fair presentation") (citations omitted).

Respondent admits that Claims I and II, to the extent they allege the evidence was insufficient to prove Jones was the perpetrator, were raised on direct appeal. The portion of Claim I, however, that allege the evidence was insufficient to prove a "breaking," and the portion of Claim II that allege the evidence was insufficient to prove a "larceny," were each determined to be defaulted in the state

habeas proceedings pursuant to the rule of <u>Slayton v. Parrigan</u>.[6] <u>See</u> Dkt. No. 13-16 at 3.[7]

Claim III, to the extent it alleges that the trial court improperly admitted hearsay testimony by Anne and Peter Smith, is exhausted because it was raised in Jones's state habeas corpus petition. The habeas court found this portion of Claim III barred by the rule of <u>Slayton v. Parrigan</u>, which precludes federal review. <u>See</u> <u>Bennett v. Angelone</u>, 92 F.3d 1336, 1343 (4th Cir. 1996).

The remainder of Claim III (concerning R.S. and Stewart), as well as Claim IV (ineffective assistance of appellate counsel), are exhausted and defaulted because failed to raise either claim in state court on direct appeal or in state habeas. If Jones returned to state court and attempted to present either claim to the Virginia Supreme Court in a state habeas petition, the claims would be deemed untimely pursuant to Virginia Code § 8.01-654(A)(2),[8] which requires a habeas petition to be filed within either two years of the final judgment of trial or one year of the final disposition of direct appeal; successive pursuant to Virginia Code § 8.01-654(B)(2)[9] because he has already filed a state habeas petition and did not raise the claims in the prior state habeas petition; and the remainder of Claim III (concerning R.S. and Stewart) would also be deemed barred by the rule of

---

[6] <u>Slayton v. Parrigan</u>, bars "state habeas review of claims that were available to petitioner at trial or on direct appeal, if petitioner failed to raise them at that time," <u>Goins v. Angelone</u>, 226 F.3d 312, 328 (4th Cir. 2000) (citing <u>Slayton</u>, 205 S.E.2d at 682), and the Fourth Circuit has "consistently found the rule of <u>Slayton</u> to constitute an independent and adequate state procedural rule for the purposes of federal habeas procedural default analysis." <u>Goins</u>, 226 F.3d at 328 (citation omitted); <u>see, e.g.</u>, <u>Vinson v. True</u>, 436 F.3d 412, 417 (4th Cir. 2006) (<u>Slayton</u> is an independent and adequate state ground). As a result, a claim barred in state habeas by <u>Slayton</u> precludes federal habeas review unless the petitioner can establish cause and actual prejudice from the default; or that the failure to review the claim would result in a fundamental miscarriage of justice. <u>Goins</u>, 226 F.3d at 328 (citation omitted).

[7] In state habeas, the Virginia Supreme Court precluded habeas review of the portions of Claims I and II that were raised in state habeas because portions of each had been "addressed and resolved in the trial and direct appeal of his criminal conviction . . . [and was] not cognizable in a habeas corpus proceeding." <u>Henry</u>, 576 S.E.2d 496-97. In <u>Henry</u> the issue on direct appeal was that a "'no-knock' search was not justified," but the court observed that to the extent the habeas claim raised a new claim "that the police officers 'created' the exigent circumstances and therefore the no-knock entry was improper, that claim is barred under the holding in <u>Slayton v. Parrigan</u>." <u>Id.</u> at 497, n.3.

[8] Virginia Code § 8.01-654(A)(2) is an adequate and independent bar that precludes federal review of a claim. <u>See</u> <u>Sparrow v. Dir., Dep't of Corr.</u>, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006); <u>see, e.g.</u>, <u>Baker v. Clarke</u>, 95 F. Supp. 3d 913, 917-18 (E.D. Va. 2015) (citation omitted).

[9] Virginia Code § 8.01-654(B)(2) bars successive state habeas applications and is an independent and adequate bar precluding federal review of a claim. <u>See, e.g.</u>, <u>Clagett v. Angelone</u>, 209 F.3d 370, 379 (4th Cir. 2000).

Slayton v. Parrigan because it could have been raised at trial and asserted as error on direct appeal.

### IV. Cause and Prejudice

Federal courts may not review defaulted claims absent a showing of cause and prejudice, or a fundamental miscarriage of justice such as actual innocence. Harris v. Reed, 489 U.S. 255, 260 (1989); Shinn v. Ramirez, 596 U.S. 366, 371 (2022) ("To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim.") (quoting Coleman, 501 U.S. at 750)). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See id. at 753-54; Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). To show "prejudice," a petitioner must show an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

In his response to the motion to dismiss, Jones argues the merits of his defaulted claims, and asserts his attorney was ineffective as cause to excuse his defaults. Counsel was ineffective

1) for not objecting to Peter Smith's "hearsay testimony," as to what his eldest daughter told him citing the following testimony by Smith—"burst into our room about commotion, noise, that she had heard and was told, [Dkt. No. 14 at 7, 11] (citing 2/14/22 Tr. at 86);

2) for not objecting to Rachel Smith's testimony about what her oldest sister had told her, Id. at 7, 11;[10]

3) at trial, [because] over counsel's objection, "Anne Smith w[as] permitted to enter into evidence hearsay statements told to her by her oldest daughter. The statements were offered for the truth of the matter contained therein."

---

[10] Jones does not cite any specific testimony in his petition or his response to the motion to dismiss.

Id. at 6-7, 11];[11]

4) for not objecting to Quadira Stewart's testimony as to what her husband told her to "go and check to see if the lawnmower is there;" Id. at 11];

5) at trial and on appeal for not preserving and then arguing that the evidence was insufficient to show a "breaking;" Id. at 12; and

6) at trial for not arguing that the evidence was insufficient to show a "larceny" of the lawnmower. Id.

Although ineffective assistance of counsel may be sufficient to establish "cause" to excuse a default, see Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Slavek v. Hinkle, 359 F. Supp. 2d 473, 480 (E.D. Va. 2005),

> (W)here a petitioner for federal habeas relief seeks review of claims defaulted during state habeas proceedings, he must show that he raised the ineffectiveness argument as a cause for the defaulted substantive claims during his state habeas proceedings. If a petitioner did not raise the ineffectiveness claim at the state habeas level, a federal habeas court may not consider it. Edwards, 529 U.S. at 452-53.

Powell v. Kelly, 531 F. Supp. 2d 695, 723 (E.D. Va. 2008), aff'd, 562 F.3d 656 (4th Cir. 2009). Jones' asserted causes are defaulted, but even if not defaulted, each assertion of cause has no merit.

Claims of ineffective assistance of counsel claim are subject to the two-prong test set out in Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner establish both deficient performance and prejudice. Deficient performance requires a petitioner show that "counsel's representation fell below an objective standard of reasonableness," id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. In making such a determination, a federal habeas court "must be highly deferential" and presume "that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "If counsel's performance is found to have been

---

[11] Jones does not identify any specific testimony in his response, but in his petition he cited the following testimony—the youngest daughter texted the oldest daughter that she had heard something and Smith stated, "My oldest daughter was like no, you're not, no, you're not. Then she heard it" and then "she came across the hall and woke us up." [Dkt. No. 1 at 11].

deficient under the first part of the <u>Strickland</u> standard, to obtain relief the petitioner must also show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Richardson v. Branker</u>, 668 F.3d 128, 139 (4th Cir. 2012) (quoting <u>Strickland</u>, 466 U.S. at 694); <u>see also</u> <u>Burket v. Angelone</u>, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis").

A trial attorney's tactical decisions deserve a high degree of deference in habeas corpus review, and if there is even a chance that counsel's actions were based on sound tactical judgments, the presumption to that effect has not been overcome. See <u>Darden v. Wainwright</u>, 477 U.S. 168, 186 (1986); <u>Strickland</u>, 466 U.S. at 689; <u>Matthews v. Evatt</u>, 105 F.3d 907, 921 (4th Cir. 1997); <u>see also</u> <u>United States v. Nersesian</u>, 824 F.2d 1294, 1321 (2d Cir. 1987) (tactical decisions of trial attorney, if reasonably made, provide no basis for ineffective assistance claim).

The second prong of the <u>Strickland</u> test, the "prejudice" inquiry, requires showing that there is a ***reasonable probability*** that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694 (emphasis added). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." <u>Id.</u>

> [T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. <u>See</u> <u>Wong v. Belmontes</u>, 558 U.S. 15, 27 (2009) (*per curiam*); <u>Strickland</u>, 466 U.S. at 693. Instead, <u>Strickland</u> asks whether it is "reasonably likely" the result would have been different. <u>Id.</u>, at 696. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between <u>Strickland</u>'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." <u>Id.</u>, at 693, 697. The likelihood of a different result must be substantial, not just conceivable. <u>Id.</u>, at 693.

562 U.S. 86, 111-12 (2011). Lastly, a claim of ineffective counsel may be disposed of on either prong of <u>Strickland</u> because deficient performance and prejudice are "separate and distinct

elements." <u>Spencer v. Murray</u>, 18 F.3d 229, 232-33 (4th Cir. 1994).

*A. Cause for Claim III Defaults Regarding*
*Admission of Alleged Hearsay Statements (First Four Assertions of Cause)*

Jones first and second assertions of cause fail to establish prejudice. Aside from the alleged hearsay from the older daughter related by Peter Smith, the younger daughter (Rachel) testified (the source of the older sister's hearsay) and there was no dispute that Rachel had heard something, including the "old creaky door" opening and someone walking up and down the stairs; and that her parents then searched the house. (2/14/22 Tr. at 86-88, 91-94). Further, Jones does not identify the alleged hearsay related by Rachel, and Rachel's only mention of her sister during her testimony was that her older sister was upstairs and that after Rachel heard the door opening and footsteps, she was scared and called her sister to wake "her up because [she] didn't want to go outside if someone was there." (<u>Id.</u> at 93). Importantly, the substantive evidence upon which the trial judge relied in finding Jones guilty of the breaking and entering was the non-hearsay testimony of the Smiths and the GPS evidence. <u>See</u>, <u>supra</u> at 3, 4.[12]

It is also evident that trial counsel pursued a defense that relied upon creating doubt as to whether Jones was the person that took either the lawnmower or that entered the house; and not that no one took the missing lawnmower or entered the Smith's home and took the money. To that end, trial counsel argued that Jones was not the perpetrator. Consistent with that trial strategy, counsel pursued those points on appeal, and—not to be overlooked—counsel was successful at trial in using the GPS data to argue that Jones was only in the area and did not establish that he was peeping into either dwelling. The trial judge struck both peeping charges that relied on the limited accuracy of the GPS data, which only placed Jones in the area and not at the house "peeping"

---

[12] In finding Jones guilty of breaking and entering, the trial judge stated that he found the evidence "sufficient because the daughter's testimony puts him in the house, . . . combined with the GPS." (2/14/22 Tr. at 192).

13

through a window. (2/14/22 Tr. at 151-52, 154). <u>Williams v. Kelly</u>, 816 F.2d 939, 950 (4th Cir. 1987) ("Counsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another."); <u>see</u> <u>Carter v. Lee</u>, 283 F.3d 240, 249 (4th Cir. 2002) (due to the temptation "to find an unsuccessful trial strategy to be unreasonable," "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'") (quoting <u>Strickland</u>, 466 U.S. at 689); <u>see also United States v. Mason</u>, 774 F.3d 824, 828 (4th Cir. 2014) (Counsel "need not raise every possible claim to meet the constitutional standard of effectiveness," and is "permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success"); <u>Jackson v. United States</u>, 473 F. Supp. 2d. 640, 646 (D. Md. 2006) (the "failure of the strategy to produce an acquittal does not mean that it was incompetent.").[13]

It is unclear why Jones asserts as cause that his counsel was ineffective as to portions of Anne Smith's testimony, which contained hearsay, that were admitted over his objection. Contrary to his assertion of ineffective assistance, the trial judge sustained counsel's hearsay objection and expressly ruled that Anne Smith's reference to things her daughter told her would only be admitted to explain why Anne Smith did what she did. (2/14/22 Tr. at 75-76). In Virginia,

> "the hearsay rule excludes out-of-court declarations only when they are 'offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted.' If the court can determine, from the context and from the other evidence in the case that the evidence is offered for a different purpose, the hearsay rule is no barrier to its admission." "It necessarily follows that '[t]he hearsay rule does not operate to exclude evidence of a statement offered for the mere purpose of explaining the conduct of the person to whom it was made.'" <u>Id.</u> (citation omitted).

---

[13] <u>See</u> <u>Burket v. Angelone,</u> 208 F.3d 172, 189 (4th Cir. 2000) (court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); <u>Spencer v. Murray</u>, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy.").

Winston v. Commonwealth, 604 S.E.2d 21, 36 (Va. 2004) (citation omitted).[14] "[T]he hearsay rule does not operate to exclude evidence of a statement offered for the mere purpose of explaining the conduct of the person to whom it was made." The same reasoning applies to the admission of Qadira Stewart's statement that her husband told her to go look to see if the lawnmower was there.[15]

Consequently, there was no valid hearsay objection, no error, no plausible claim of ineffective assistance of counsel,[16] and no cause to excuse the defaults with the admission of the alleged hearsay in Claim III. See Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (citing Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").

### B. Evidence of Breaking

Jones fifth assertion of cause, alleges trial counsel was ineffective for not objecting to the sufficiency of evidence with respect to the "breaking" element necessary to convict for burglary, which Jones raised as a substantive claim in a portion of Claim I. In this instance, again, there was no basis to raise such an objection.

---

[14] In Virginia, a judge is presumed to consider evidence only for the purpose for which it was admitted, Eckhart v. Commonwealth, 279 S.E.2d 155, 157 (Va. 1981), and "this presumption will control in the absence of clear evidence to the contrary." Hall v. Commonwealth, 421 S.E.2d 455, 462 (Va. Ct. App. 1992) (en banc).

[15] Federal courts also allow hearsay, not for the truth of the matter, but to explanation conduct. See, e.g., United States v. Love, 767 F.2d 1052, 1063 (4th Cir. 1985) (holding that agent's testimony concerning information received from another agent "was offered not for its truth but only to explain why the officers and agents made the preparations that they did in anticipation of the appellant's arrest."); see also Fed. R. Evid. 801(c) (defining an out-of-court statement as hearsay if it is "offered in evidence to prove the truth of the matter asserted").

[16] Rodriguez v. Bush, 842 F.3d 343, 346 (4th Cir. 2016) ("A defendant is not prejudiced if his counsel fails to make an objection that is 'wholly meritless under current governing law'") (quoting Lockhart v. Fretwell, 506 U.S. 364, 374 (1993)); Truesdale v. Moore, 142 F.3d 749, 756 (4th Cir. 1998) ("It is certainly reasonable for counsel not to raise unmeritorious claims."); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (stating that it is axiomatic that failure to raise a meritless objection cannot serve as a ground for ineffective assistance of counsel); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) (noting that "[a]n attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); Palmes v. Wainwright, 725 F.2d 1511, 1523 (11th Cir. 1984) (the "right to effective assistance of counsel does not require counsel to raise every objection without regard to its merit.").

At trial, Anne Smith testified that her back door was closed on the night of the burglary and that the money was taken from her wallet. (2/14/22 Tr. at 85, 87). Rachel Smith, her daughter, testified that, while her parents and sister were upstairs, she heard the back door open ("the old creaky door") and the sound of footsteps that night. (Id. at 91-94). As previously noted, the trial judge specifically relied upon those undisputed facts that, when considered together with the GPS data, established that Jones was the perpetrator.

Under Virginia law, a "breaking involves the application of some force, slight though it may be, whereby the entrance is [achieved]." *Finney v. Commonwealth*, 671 S.E.2d 169, 172 (Va. 2009) (internal citation and quotation marks omitted); See, e.g., Phoung v. Commonwealth, 424 S.E.2d 712, 714 (Va. Ct. App. 1992) (holding that the element of breaking was established where the homeowner left a sliding glass door open slightly to allow dogs to enter the home, but the defendant opened the door further to effectuate his own entry). "Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute [a 'breaking'], so long as those acts resulted in an entrance contrary to the will of the occupier of the [property]. Id. In order to gain entrance through the closed back door of the Smiths' house, some force was necessarily applied to open that door.

Counsel was not ineffective for not raising a meritless objection, and Jones fifth argument for cause to excuse the defaulted portion of Claim I is likewise meritless.[17]

### C. Larceny of the Lawnmower

In his attempt to establish cause for the defaulted portion of Claim II, Jones alleges that his counsel was ineffective for not challenging the sufficiency of the evidence that the lawnmower was stolen, specifically the "felonious taking and possession of the lawnmower by" Jones. The

---

[17] As noted previously, counsel reasonably pursued a different trial strategy relying on using the GPS evidence to cast doubt on Jones as the perpetrator. See, supra at 14.

evidence at trial on the theft of the lawnmower is set out above. See, supra at 5. The Virginia Court

of Appeals also found as follows:

> As with any element of an offense, identity may be proved by direct or
> circumstantial evidence. Crawley v. Commonwealth, 29 Va. App. 372, 375, 512
> S.E.2d 169 (1999). "Circumstantial evidence is as competent and is entitled to as
> much weight as direct evidence, provided it is sufficiently convincing to exclude
> every reasonable hypothesis except that of guilt." Holloway v. Commonwealth, 57
> Va. App. 658, 665, 705 S.E.2d 510 (2011) (en banc) (quoting Coleman v.
> Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864 (1983)). "[C]ircumstantial
> evidence is not viewed in isolation." Id. (quoting Commonwealth v. Hudson, 265
> Va. 505, 514, 578 S.E.2d 781 (2003)). "While no single piece of evidence may be
> sufficient, the combined force of many concurrent and related circumstances, each
> insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Pick
> v. Commonwealth, 72 Va. App. 651, 668, 852 S.E.2d 479 (2021) (quoting Finney
> v. Commonwealth, 277 Va. 83, 89, 671 S.E.2d 169 (2009)). The fact that "[a]
> defendant's theory of the case differs from that taken by the Commonwealth does
> not mean that every reasonable hypothesis consistent with his innocence has not
> been excluded. What weight should be given evidence is a matter for the
> [factfinder] to decide." Edwards v. Commonwealth, 68 Va. App. 284, 301, 808
> S.E.2d 211 (2017) (alterations in original) (quoting Haskins v. Commonwealth, 44
> Va. App. 1, 9, 602 S.E.2d 402 (2004)).
>
> Jones argues that "no other circumstantial evidence was presented to further
> identify [Jones] as the perpetrator" of the larceny of the lawnmower. The evidence,
> however, established that Jones was at the Stewarts' house at the same time that the
> video surveillance indicated that a person removed the lawnmower from the area.
> Additionally, Jones conceded his presence in the general area and the GPS data
> placed Jones at the Stewarts' house. Screenshots from the video surveillance
> recording showed an individual whose movements were tracked to the Stewarts'
> house. Cole testified that while viewing the surveillance video he was able to track
> the individual's movements from his house to the Stewarts' house, and back to his
> neighbor's house where the individual placed a lawnmower against his neighbor's
> tree. The court had the opportunity to view both Jones and the stills from the
> surveillance video and make a visual comparison. The record supports that a
> rational trier of fact could find that Jones was the individual who took the Stewarts'
> lawnmower.

Jones, 2023 Va. App. LEXIS 330, *6-7. As previously noted, trial counsel no doubt realized the

unlikely success of pursuing an argument that the lawnmower was not stolen, and instead chose a

defense that not only proved successful in his argument to strike the peeping in a window counts,

but which also had evidence—the GPS data and testimony regarding accuracy—that allowed

counsel to admit the undisputable fact that Jones was in the area of the Stewart's home and still

credibly argue that his proximity to the Stewart home was not enough. See Dkt. No. 13-4.[18] But, as noted by the Virginia Court of Appeals, the trial judge had the opportunity to compare the still photographs and Jones, and that, coupled with other circumstances was sufficient. Jones has again failed to establish his assertion for cause to excuse his default.

### D. Ineffective Assistance of Appellate Counsel (Claim IV)

Jones' assertion that appellate counsel was ineffective, it is also without merit. "In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (citing Strickland, 466 U.S. at 688, 694). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)). A presumption exists that appellate counsel "decided which issues were most likely to afford relief on appeal." Bell, 236 F.3d at 164 (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" Id. (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)).

---

[18] In his petition for appeal, appellate counsel argued that the prosecution "relied heavily" on the GPS data in identifying Jones as the perpetrator, that there were no eyewitnesses, and that GPS data was "only 90% accurate within 30 feet, which means that the [GPS Monitor] unit could be anywhere along a 60-foot actual diameter of a 360-degree circle away from where the dot is listed on the map." Dkt. No. 13-4 at 10, 11. Counsel summarized his argument stating that other than the GPS data,

> no other circumstantial evidence was presented to further identify the Defendant as the perpetrator. No DNA or fingerprint evidence was produced nor was the Defendant caught with any of the items that were allegedly taken. As has been repeatedly stated, this is a clearly circumstantial case and a reasonable hypothesis that needed to be excluded was that the Defendant has simply walked by these locations at the time the GPS unit put him in those locations.

Dkt. No. 13-4 at 12.

Here, Jones alleges that his appellate counsel was ineffective for not raising the issue of "Smith's and Q. Stewart's hearsay statements, which may have gained defendant a new trial;" the prosecution's "failure to show there was a 'breaking' into the Smith's home;" and a "larceny of the Stewart's lawnmower." Dkt. No. 1 at 14-15. It is apparent from the discussion herein that the arguments Jones' alleges his counsel should have raised on appeal were not stronger than the arguments he did raise on appeal, and also that those arguments also had no merit.

### V. Merits Standard of Review (Non-Defaulted Portions of Claims I and II)

Review of the non-defaulted portions of Claims I and II is governed by the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA standard requires federal courts give deference to the state court's merits decision unless the decision was (1) contrary to, or an unreasonable application of, a clearly established United States Supreme Court decision, or (2) based on an unreasonable determination of facts "in light of the record before the state court." Harrington v. Richter, 562 U.S. 86, 100 (2011); see 28 U.S.C. § 2254(d)(2). Under 28 U.S.C. § 2254(e)(1), a federal court must presume a state court's determination of facts is correct unless rebutted by clear and convincing evidence. Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) (factual issue determined by state court "shall be presumed to be correct"); Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006) ("[t]he required deference encompasses both the state court's legal conclusions and its factual findings"); see also Wood v. Allen, 558 U.S. 290, 300 (2010). ("a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"); Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008) ("federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence").

A state court's decision constitutes an unreasonable application of clearly established

federal law under § 2254(d)(1) when a state court correctly identifies the "governing legal principle . . . but unreasonably applies that principle to the facts of the . . . case." Barnes v. Joyner, 751 F.3d 229, 238 (4th Cir. 2014) (citation omitted).[19] In making this assessment, federal courts "look to whether the state court's application of law was objectively unreasonable and not simply whether the state court applied the law incorrectly." Id. at 238-39 (citation omitted).

> [T]he United States Supreme Court has increasingly cautioned, AEDPA significantly constrains our review of state court decisions on federal constitutional claims. We are not at liberty to substitute our judgment for that of the state court on matters of federal constitutional law, even if we believe the state court decision was incorrect. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was *unreasonable* — a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (emphasis added); see also Harrington v. Richter, 562 U.S. 86 (2011). The state court decision may be deemed unreasonable "only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e] [Supreme] Court's precedents.'" Nevada v. Jackson, [569 U.S. 505, 508-09] (2013) (per curiam) (quoting Harrington, [562 U.S. at 102].

Hurst v. Joyner, 757 F.3d 389, 394 (4th Cir. 2014).

Finally, under the look through doctrine, the opinion of the Virginia Court of Appeals is the last reasoned decision on the non-defaulted issues of sufficiency is the ruling entitled to deference because its opinion was summarily affirmed by the Supreme Court of Virginia. See Ylst v. Nunnemaker, 501 U.S. 797 (2001).

"Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." *Wilson v. Greene*, 155 F.3d 396, 405-06 (4th Cir. 1998). Under AEDPA, federal courts

---

[19] "Only holdings of the Supreme Court issued by the time of the relevant state court decision, and not circuit precedent, can form the basis for habeas relief under Section 2254(d)(1)." Dodson v. Ballard, 800 F. App'x. 171, 176 (4th Cir. 2020) (citing Parker v. Matthews, 567 U.S. 37, 48-49, (2012); Barnes, 751 F.3d at 239). The federal court reviews the "ultimate decision" of the state court, not the specific contents of its reasoning or opinion. Blanton v. Quarterman, 543 F.3d 230, 236 (5th Cir. 2008). The state court need not articulate, or even know, the clearly established Supreme Court law, so long as its reasoning and decision do not contradict such law. See Lenz, 444 F.3d at 307.

"inquire whether a state court determination that the evidence was sufficient to support a conviction was an 'objectively unreasonable' application of [the standard enunciated in] Jackson [v. Virginia, 443 U.S. 307, 319 (1979)]." Williams v. Ozmint, 494 F.3d 478, 489 (4th Cir. 2007). Under AEDPA, sufficiency claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012). As the Supreme Court of the United States explained in Coleman:

> First, on direct appeal, "it is the responsibility of the [trial court sitting as fact-finder] — not the [appellate] court — to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the [trial court's] verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the [trial court]." Cavazos v. Smith, 565 U. S. 1, 2 (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Ibid. (quoting Renico v. Lett, 559 U. S. 766, 773 (2010))

Coleman, 566 U.S. at 651.

Furthermore, on federal habeas review, the Jackson standard requires a federal court to view "the evidence in the light most favorable to the prosecution," to determine if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," 443 U.S. at 319, and the state court's factual findings are presumed correct. See 28 U.S.C. § 2254(e)(1); Pope v. Netherland, 113 F.3d 1364, 1367 (4th Cir. 1997) (citing Sumner v. Mata, 449 U.S. 539, 546-47 (1981)). In reviewing the sufficiency of the evidence, "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008) (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)). Indeed, "to overturn a state court's credibility judgments, the state court's error must be stark and clear." Id. see also United States v. Arrington, 719 F.2d 701, 704 (4th Cir. 1983) (holding that federal habeas courts, when making a sufficiency-of-the-

evidence determination, do not weigh the evidence or review the credibility of witnesses).

The evidence summarized by the Virginia Court of Appeals, establishes that Jones broke and entered the Smiths' home and took the money from Anne Smith's purse. The Virginia Court of Appeals summarized the facts and rejected Jones' argument that he was not the person who entered the house and took the money.

As to the theft of the lawnmower, that sufficiency claim is also without merit. On appeal, the Virginia Court of Appeals rejected his argument, and found the evidence at trial, including GPS, screen shots, and witness testimony, established that he stole the lawnmower.

> The evidence . . . established that Jones was at the Stewarts' house at the same time that the video surveillance indicated that a person removed the lawnmower from the area. Additionally, Jones conceded his presence in the general area and the GPS data placed Jones at the Stewarts' house. Screenshots from the video surveillance recording showed an individual whose movements were tracked to the Stewarts' house. Cole testified that while viewing the surveillance video he was able to track the individual's movements from his house to the Stewarts' house, and back to his neighbor's house where the individual placed a lawnmower against his neighbor's tree. The court had the opportunity to view both Jones and the stills from the surveillance video and make a visual comparison. The record supports that a rational trier of fact could find that Jones was the individual who took the Stewarts' lawnmower.

Jones, 2023 Va. App. LEXIS 330 at *10-11.

The state court's decision regarding each sufficiency of the evidence issue was reasonable and fully supported by the evidence. See supra at 3-4. Based on that evidence, a rational trier of fact could have found Jones guilty. The state court's decision is neither objectively unreasonable, nor is it contrary to or an unreasonable application of established federal law or based on an unreasonable determination of the facts. See Burr v. Jackson, 19 F.4th 395, 403 (4th Cir. 2021) (state court's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility for fairminded disagreement*.") (quoting White v. Woodall, 572 U.S. 415, 420 (2014)). Claim IV will be dismissed.

## VI. Conclusion

For the foregoing reasons, the motion to dismiss the petition, [Dkt. No. 12], must be granted

and the petition must be dismissed with prejudice and an appropriate Order shall issue.[20]

Entered this ___19th___ day of ___Feb___, 2025.

_Claude M. Hilton_
Hon. Claude M. Hilton
United States District Judge

Alexandria, Virginia

---

[20] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.